**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| CLARDY MALUGEN, | ) | |
| | ) | Civil Action |
| Plaintiff, | ) | No._____ |
| | ) | |
| v. | ) | |
| | ) | |
| JP MORGAN CHASE BANK, | ) | |
| NATIONAL ASSOCIATION and | ) | |
| MORTGAGE CONTRACTING | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff alleges JP Morgan Chase Bank, National Association ("JPMC") violated the Real Estate Settlement Procedures Act 12 U.S.C. § 2601 *et seq.* ("RESPA") and the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"). Plaintiff further alleges Mortgage Contracting Services, LLC ("MCS") violated the FCCPA. Plaintiff also claims damages from Defendants' common law trespass.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleges JPMC violated RESPA, a federal statute. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the basis of the federal claims involve the same illegal practices that support the state claims.

2.      Venue is proper because all acts and omissions causing the claims occurred within this District.

## PARTIES

3.      Plaintiff is a natural person over the age of 18 and is a resident of Orange County, Florida.

4.      JPMC is a national association with its principal address at 111 Polaris Pkwy Columbus, Oh 43240.

5.      MCS is a foreign limited liability company with its principal address at 350 Highland Dr., Suite 100, Lewisville, TX 75067.

## FACTUAL ALLEGATIONS

6.      In 2003, Plaintiff bought a home at 816 E. Marks St., Orlando, FL ("Property") secured by a mortgage and note ("Mortgage").

7.      The Mortgage is the standard form Single-Family Fannie Mae/Freddie Mac Uniform Instrument.

8.      Federal National Mortgage Association ("FNMA") owns the Mortgage.

9.      JPMC services the Mortgage for FNMA.

10.      As FNMA's servicer, JPMC must follow the Fannie Mae Single Family Servicing Guide ("Guidelines").

https://singlefamily.fanniemae.com/media/22006/display

11.      Along with the Mortgage, the Guidelines notify servicers what actions and activities are reasonable when servicing FNMA owned mortgage loans.

12.      A default allegedly occurred under the Mortgage in November 2017.

13.      Under paragraph 9 in the Mortgage, after default the lender "may do and pay for whatever is reasonable or appropriate to protect lender's interest in the

property[,]" but lender is under "no duty or obligation to do so." ¶ 9.

14.     "Any amounts *disbursed* by lender under this section 9 shall become additional debt of borrower secured by this Security Instrument."

15.     The Mortgage prohibits the servicer from charging default-related fees to the borrower *"that are expressly prohibited"* by the Mortgage or by "Applicable Law," (Mortgage ¶ 14), and further, the servicer can only collect "expenses *incurred*" or amounts "*disbursed*" related to the default. *Id*. ¶¶ 19, 22 (emphasis added).

16.     The Mortgage, under paragraph 14, restricted the default-related fees JPMC could charge Plaintiff: "[l]ender may charge Borrower fees for services *performed* In connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." ¶ 14.

17.     The Mortgage only allows "reasonable entries upon and inspections of the Property." ¶ 7. Those "reasonable entries" are allowed only if the lender "has reasonable cause…." *Id*. "Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause." ¶ 7.

18.     Since the alleged default, Defendants have charged and tried to collect amounts from Plaintiff for default-related services that were unreasonable, unnecessary, unfair, and deceptive.

19.     On or about October 29, 2019, Plaintiff, through counsel, sent a request for information ("RFI") to the address JPMC established for receiving notices of error.

Exhibit A.

20.     RFI 1 had sufficient information for JPMC to identify the Plaintiff, her account number, and the Property. *Id*.

21.     RFI 1 had enough information for JPMC to identify the information being requested, which included an itemization of the default-related costs charged to the Mortgage.

22.     On or about November 14, 2019, JPMC responded to RFI 1 with an itemization of the default-related costs totaling $8,716.80. Exhibit B.

23.     At the bottom of the November 14 letter, JPMC said the letter was an "**attempt to collect a debt**…." *Id*. (emphasis original).

24.     The total amount of $8,716.80 included charges for default-related services that were unreasonable, unnecessary, and not performed.

25.     JPMC charged legal costs that were for services not yet performed. For example, in the November 14 letter, JPMC charged legal costs for foreclosure proceedings "from March 2, 2019, to February 1, 2020" and included them in the $8,716.80.

26.     The legal costs are also unreasonable, unfair, and deceptive because, upon information and belief, JPMC paid its attorneys much less than it charged the Plaintiff.

27.     JPMC has a contract with the attorneys who perform legal services on its behalf.

28.     Upon information and belief, the contract between JPMC and the

attorneys shows that JPMC's cost for legal services is much less than the amount charged to Plaintiff.

29.     Further, the cashed checks will show that the amount JPMC paid the attorneys is much less than the amount charged to the Mortgage.

30.     Not only does JPMC know the legal costs are illegitimate, because the work had not yet been performed, but JPMC also knows the property inspection charges are unreasonable, unfair, and deceptive, and it has no legal right to charge or collect them.

31.     The $8,716.80 also includes charges for property inspections.

32.     The property inspection charges are also unreasonable, unfair, and deceptive.

33.     JPMC has a contract with the third-party property inspection vendor who performed the property inspections at Plaintiff's home.

34.     Upon information and belief, the contract between JPMC and the third-party property inspection vendor shows that JPMC's cost for each property inspection is much less than the amount charged to Plaintiff.

35.     As a result, JPMC knows the property inspection charges are unreasonable, unfair, and deceptive, and it has no legal right to charge or collect them.

36.     The $8,716.80 also includes charges for property preservation services.

37.     The property preservation charges are unreasonable, unfair, and deceptive, and JPMC has no legal right to charge or collect them.

38.     JPMC has a contract with the third-party property preservation vendor

who allegedly performed the property preservation services at the Plaintiff's home.

39.     Upon information and belief, the contract between JPMC and the third-party property preservation vendor shows that JPMC's cost for the property preservation services is much less than the amount charged to Plaintiff.

40.     As a result, JPMC knows the property preservation charges are unreasonable, unfair, and deceptive, and it has no legal right to charge or collect them.

41.     JPMC has charged the Plaintiff for property preservation services, like yard maintenance, that are unreasonable, unfair, and deceptive, and JPMC has no legal right to charge or collect for them.

42.     For example, the Plaintiff has always maintained the yard at the Property through a yard maintenance company. Therefore, JPMC has no reasonable reason to hire a third-party vendor to perform yard maintenance and charge the Plaintiff for the service.

43.     Further, JPMC as principal directed MCS as its agent to break in the property and change the locks.

44.     JPMC has a contract with a third-party vendor who performed these default-related services at Plaintiff's home.

45.     Upon information and belief, the contract between JPMC and the third-party property inspection vendor shows that JPMC's cost for each property inspection is much less than the amount charged to Plaintiff.

46.     On or about May 24, 2019, MCS acting on behalf of its principal JPMC broke into the Plaintiff's home and "winterized" the property.

47.     Defendants acted in concert by breaking into the Property and changing the locks without the Plaintiff's consent and without a reasonable basis to do so.

48.     Defendants also shut-off the utilities to the Property.

49.     By shutting off the utilities, including the air conditioner, without a reasonable basis to do so, the Defendants caused humidity and moisture to sky rocket inside the Property that resulted in damage like mold and mildew growth.

50.     The break in also left Plaintiff feeling violated and afraid.

51.     Because Defendants changed the locks, Plaintiff also spent money to replace the locks put in place by Defendants.

52.     Plaintiff did not abandon or vacate the Property, which the Defendants knew before breaking in.

53.     The Defendants' trespass left Plaintiff feeling violated and afraid.

54.     The following facts show Plaintiff had not abandoned the Property:

- Plaintiff has always maintained the yard at the Property.

- Plaintiff was in communication with JPMC about the Property.

- The Property had Plaintiff's valuables outside and inside the Property.

- Plaintiff hired an attorney to represent her in the foreclosure.

55.     MCS left a large note on the front window of the Property, which is located on a busy street, which suggested the Property was vacant.

56.     Because the Plaintiff's possessions were visible inside the Property, the large note left the Property vulnerable to further break-ins.

57.     On or about August 22, 2019, Plaintiff, through counsel, mailed a notice

of error ("NOE 1") to the address JPMC established for receiving notices of error. Exhibit C.

58.     NOE 1 had enough information for JPMC to identify Plaintiff and her mortgage loan number.

59.     NOE 1 had enough information for JPMC to determine the error complained of by Plaintiff.

60.     The error in NOE 1 concerned the "winterization" of the Property. As explained, Defendants had no reasonable basis to winterize the Property, especially since the average temperature in December, in Orlando, Florida, rarely dips below 50 degrees.

61.     Plaintiff requested a refund of all fees and charges related to the winterization.

62.     JPMC did not confirm receipt of NOE 1 within five days.

63.     JPMC responded to NOE 1 on or about September 10, 2019. Exhibit D.

64.     JPMC said it investigated the error and found that no error occurred.

65.     JPMC said it did not winterize the home but performed yard maintenance and changed the locks on May 25.

66.     JPMC did not perform a reasonable investigation of the error in NOE 1 because JPMC did not say whether it spoke to MCS during the investigation.

67.     JPMC did not perform a reasonable investigation because its own property inspection reports show that *no* work was performed on May 24 or May 25.

68.     JPMC's claim of no error is contradicted by the note MCS left at the

Plaintiff's home that the Property was winterized.

69.    JPMC could not have performed a reasonable investigation because its own records reveal that JPMC charged Plaintiff for "winterizing" the Property.

70.    Because JPMC's response to NOE 1 was insufficient, on or about October 29, 2019, Plaintiff, through counsel, mailed RFI 1 requesting the documents JPMC used to investigate and determine no error occurred.

71.    Plaintiff paid attorney's fees and costs and postage as a direct result of JPMC's deficient response to NOE1 and having to send RFI 1.

72.    JPMC responded to RFI 1 with property inspection reports and with an itemization of the total default-related fees and costs.

73.    The information and JPMC's representations in its response were misleading and inaccurate.

74.    For example, JPMC says it completed yard maintenance and changed the locks on May 25, 2019. But its own records show no default-related service was performed at the Property on May 25, 2019.

75.    As another example, JPMC claims the Property was not winterized, but the itemization of charges reveals that JPMC charged the Plaintiff $100 on July 3, 2019, labeled as "Cost of preparing property heat and/or plumbing systems for winter."

76.    As a direct result of JPMC's unreasonable investigation and response to NOE 1, and the inaccurate and misleading information in response to RFI 1, on or about February 26, 2020, Plaintiff, through counsel, mailed a written notice of error ("NOE 2") to the address JPMC established for receiving notices of error. Exhibit E.

77.     NOE 2 had enough information for JPMC to identify Plaintiff and her mortgage loan number.

78.     NOE 2 had sufficient information for JPMC to determine the error complained of including but not limited to charges for unreasonable yard maintenance and for attorney's fees and costs that had not yet been performed.

79.     NOE 2 addressed the "winterization" of the Property. As explained, Defendants had no reasonable basis to winterize the Property, especially since Orlando has an average temperature that rarely dips below 50 degrees.

80.     On July 11, 2019, JPMC charged the Plaintiff $50 for the "Cost of publishing the foreclosure sale date in local newspapers." NOE 2 addressed JPMC's charge for "publishing a foreclosure sale date" because no foreclosure sales date had been set.

81.     NOE 2 asked JPMC to refund all the charges and supply written notice of the changes.

82.     On or about March 5, 2020, JPMC mailed a written response. Exhibit F.

83.     In the March 5 letter, JPMC says it reviewed the loan and found no error but does not say whether JPMC performed an investigation into the errors found in NOE 2.

84.     JPMC did not perform a reasonable investigation into the errors found in NOE 2.

85.     For example, NOE 2 disputed the $50 charge, imposed on July 11, 2019, for the "Cost of publishing the foreclosure sale date in local newspapers." The

March 5 letter says no foreclosure sale date has been published. Despite this admission, JPMC, in the March 5 letter, says no error occurred, and therefore, no refund was made.

86. If JPMC had performed a reasonable investigation, it would have refunded the $50 charge, along with refunding the other default-related charges, and provided notice to Plaintiff that an error occurred and was fixed.

87. Plaintiff has complied with all conditions precedent to filing this action because she has sent written letters to JPMC asking for a cure of its violations of state and federal law, but JPMC has refused to do so.

**JPMC has a pattern and practice of choosing to violate RESPA and Regulation X**

88. JPMC's standard business practice involves systemic failures to correct errors and perform reasonable investigations.

89. The Consumer Financial Protection Bureau has received thousands of complaints against JPMC for its systemic failure to follow RESPA and Regulation X.[1]

90. The following opinions also demonstrate JPMC's pattern and practice of non-compliance:

- *Hernandez v. J.P. Morgan Chase Bank N.A.*, 14-24254-CIV, 2016 WL 2889037, at *6 (S.D. Fla. May 16, 2016) (finding plaintiff stated a claim that JPMC failed

---

[1] https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=JPMORGAN%20CHASE%20%26%20CO.&from=0&issue=Problem%20with%20a%20credit%20reporting%20company%27s%20investigation%20into%20an%20existing%20problem&product=Mortgage&product=Mortgage%E2%80%A2Other%20mortgage&product=Mortgage%E2%80%A2Conventional%20fixed%20mortgage&product=Mortgage%E2%80%A2Conventional%20home%20mortgage&product=Mortgage%E2%80%A2FHA%20mortgage&product=Mortgage%E2%80%A2Conventional%20adjustable%20mortgage%20%28ARM%29&product=Mortgage%E2%80%A2Home%20equity%20loan%20or%20line%20of%20credit&product=Mortgage%E2%80%A2Other%20type%20of%20mortgage&product=Mortgage%E2%80%A2Home%20equity%20loan%20or%20line%20of%20credit%20%28HELOC%29&product=Mortgage%E2%80%A2VA%20mortgage&product=Mortgage%E2%80%A2Second%20mortgage&product=Mortgage%E2%80%A2Reverse%20mortgage&searchField=all&searchText=&size=25&sort=created_date_desc (last visited 3/25/2020).

to perform a reasonable investigation after receiving an NOE)

- *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 Fed. Appx. 905, 908 (11th Cir. 2016) (unpublished) (finding plaintiff stated a claim under RESPA for JPMC's failure to conduct a reasonable investigation)

- *Guccione v. JPMorgan Chase Bank, N.A.*, 3:14-CV-04587 LB, 2015 WL 1968114, at *13 (N.D. Cal. May 1, 2015) (finding plaintiff stated a claim against JPMC for failing to correct errors and conduct a reasonable investigation)

**JPMC's illegal conduct has caused Plaintiff actual, concrete damages**

91.     Because of JPMC's failure to follow its duties under Regulation X and RESPA for RFI 1 and NOE 1-2, Plaintiff lost time trying to secure accurate information from JPMC.

92.     Because of JPMC's failure to comply with its duties under Regulation X and RESPA for RFI 1 and NOE 1-2, Plaintiff has spent money on postage and attorney's fee and costs trying to correct errors and receive accurate information from JPMC.

93.     Under RESPA and Regulation X, Plaintiff is entitled to receive accurate information about amounts owed under her mortgage loan. Because of JPMC's failure to comply with its duties under Regulation X and RESPA for RFI 1 and NOE 1-2, JPMC has deprived Plaintiff from received accurate information about the amounts owed under her loan.

94.     Because JPMC has refused to correct the errors, Plaintiff's credit report has reflected an inaccurate amount owed.

95. Because JPMC has charged and tried to collect unfair, deceptive, and unreasonable default-related fees, it has placed Plaintiff at imminent risk of paying amounts not owed.

96. Moreover, Defendants have caused Plaintiff financial damages from changing her locks with no reasonable basis to do so.

**COUNT I AS TO JPMC'S VIOLATION OF THE REAL
ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605 *et seq.***

97. Plaintiff is a "borrower" under RESPA because she signed the Mortgage Loan and is otherwise liable under the Mortgage Loan.

98. JPMC is a "mortgage servicer" as defined by RESPA because it has accepted and applied mortgage payments from Plaintiff.

99. JPMC violated RESPA § 2605(k)(1)(C) when it received written notices of error from Plaintiff, and in response, JPMC performed unreasonable investigations, or no investigations at all, and failed to correct the mortgage servicing errors that Plaintiff identified.

100. JPMC also violated RESPA § 2605(k)(1)(C) when it received written requests for information from Plaintiff, and in response, JPMC supplied inaccurate information or incorrect information.

101. Further, under RESPA § 2605(k)(1)(E) a mortgage servicer violates RESPA if it "fail(s) to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

102. JPMC violated RESPA § 2605(k)(1)(E) because it responded to

Plaintiff's RFIs and NOEs with amounts not owed under the mortgage, and because it received written notices of error from Plaintiff, and in response, JPMC performed unreasonable investigations, or no investigations at all, and failed to correct the mortgage servicing errors that Plaintiff identified.

103.    JPMC violated RESPA § 2605(k)(1)(E) because it violated 12 CFR § 1024.36(d)(1)(i)-(ii) when it received written requests for information from Plaintiff and failed to respond with accurate, clear, and conspicuous information. 12 CFR § 1024.32(a)(1), *See* 12 CFR § 1024.38(b)(1)(iii).

104.    JPMC's standard business practice involves noncompliance with the requirements of RESPA and Regulation X.

105.    JPMC knew about the problems with its RESPA and Regulation X policies and procedures. Despite this awareness, JPMC continues to engage in a pattern and practice of violating RESPA and Regulation X as evidenced by the numerous RESPA violations alleged in this complaint and the court opinions cited above.

106.    Further, JPMC's pattern and practice of RESPA non-compliance is shown by the thousands of complaints the Consumer Financial Protection Bureau.

107.    Because of JPMC's actions, JPMC has deprived Plaintiff of the statutory right to accurate, clear, and conspicuous information about amounts owed under the Mortgage, the right to receive a reasonable investigation into errors identified in her written notices of errors, lost time and money in investigating and responding to JPMC's violations, emotional damages, monetary damages, reputational and credit damages, and mental distress.

108.    As a result, JPMC is liable to Plaintiff for actual damages, statutory damages of up to $2,000.00 per RESPA violation, and costs and attorneys' fees under 12 U.S.C. § 2605.

**COUNT II AS TO JPMC'S VIOLATIONS OF THE FLORIDA
CONSUMER COLLECTION PRACTICES ACT FLA. STAT. § 559.72(9)**

109.    The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

110.    The Mortgage is a "debt" as defined by the FCCPA because it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(6).

111.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she bought the Property by mortgage for personal, family or household use.

112.    JPMC is a "person" under the FCCPA. *See* Fla. Stat. § 559.72; *see also Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

113.    The FCCPA prohibits the direct or indirect collection, or attempts at collection, of illegitimate debts.

114.    The FCCPA also prohibits the use of unfair and deceptive conduct, *i.e.* the assertion of a legal right known not to exist, when collecting or trying to collect a debt. *See* Fla. Stat. § 559.72(9).

115.    JPMC violated Fla. Stat. § 559.72(9) when it used unfair and deceptive

conduct in collecting default-related charges from Plaintiff.

116.     JPMC's conduct was unfair, deceptive, and unreasonable according to the Mortgage and the Guidelines.

117.     JPMC violated Fla. Stat. § 559.72(9) when it used unfair and deceptive conduct in collecting default-related charges from Plaintiff.

118.     JPMC violated Fla. Stat. § 559.72(9) when it claimed, attempted, and threatened to collect unreasonable default-related charges from Plaintiff. *See* Fla. Stat. § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *cf. Prescott v. Seterus Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) (holding that charging certain fees not agreed to in the mortgage agreement violated the FCCPA and FDCPA); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (holding that certain fees violate the FDCPA where they are not supported by the language of the consumer agreement underlying the debt at issue); Fla. Stat. § 559.77(5) ("In applying and construing [the FCCPA], due consideration and *great weight* shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

119.     JPMC knew the default-related charges were illegitimate because Plaintiff disputed them on several occasions.

120.     JPMC knew the default-related charges were unreasonable because it is charged with knowledge of the terms and conditions in the Mortgage and Guidelines.

121.     JPMC has also received thousands of complaints related to the same

conduct complained of by Plaintiff.

122.    JPMC also knew the default-related fees and costs were illegitimate because no third-party vendor had performed the work charged for.

123.    JPMC had overcharged the Plaintiff for the default-related charges because the amount it paid the vendors is far less than the amount it charged Plaintiff.

124.    JPMC is also liable for MCS's misconduct because MCS functioned as JPMC's agent.

125.    JPMC acted willfully or with a reckless indifference to the Plaintiff's rights. Because of JPMC's violations of the FCCPA, Plaintiff has experienced substantial damage, including but not limited to, out-of-pocket monetary loss, deprivation of their statutory right to accurate, clear, and conspicuous information about amounts owed under the Mortgage, higher principal accrued on the Mortgage, time spent addressing JPMC's illegal practices, financial damages, anxiety, frustration, and mental and emotional distress.

126.    Because of JPMC's violations of the FCCPA, Plaintiff is entitled to actual damages, punitive damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

## COUNT III AS TO MCS'S VIOLATION OF THE
## FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)

127.    The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

128.    The Mortgage is a "debt" as defined by the FCCPA because it is an

"obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(6).

129.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she bought the Property by mortgage for personal, family or household use.

130.    MCS is a "person" under the FCCPA. *See* Fla. Stat. § 559.72; *see also Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

131.    The FCCPA prohibits the use of unfair and deceptive conduct, *i.e.* the assertion of a legal right known not to exist, when collecting or trying to collect a debt. *See* Fla. Stat. § 559.72(9).

132.    Upon information and belief, MCS contracted with JPMC for default-related services.

133.    Upon information and belief, MCS has invoiced JPMC for services not performed on the Property. In turn, JPMC billed and tried to collect a portion of those amounts from Plaintiff.

134.    MCS violated Fla. Stat. § 559.72(9) when, acting in concert with JPMC, it used unfair and deceptive conduct when trespassing at the Property and changing the locks.

135.    MCS violated Fla. Stat. § 559.72(9) when, acting in concert with JPMC, it caused Plaintiff to be billed for default-related services that were unfair, deceptive, and unreasonable.

136.    MCS also violated Fla. Stat. § 559.72(9) when it used unfair, deceptive, and unreasonable conduct that caused Plaintiff to be billed for default-related services.

137.    MCS violated Fla. Stat. § 559.72(9) when, through JPMC, it claimed, attempted, and threatened to collect these illegitimate default-related charges from Plaintiff.

138.    MCS knew the default-related charges were illegitimate because it had not performed the work on the Property, and because it knew "winterizing" a property in Orlando, Florida is unfair, deceptive, and unreasonable.

139.    MCS acted willfully or with a reckless indifference to the Plaintiff's rights. Because of MCS's violations of the FCCPA, Plaintiff has experienced substantial damage, including but not limited to, out-of-pocket monetary loss, deprivation of her statutory right to be free from unfair and deceptive conduct in connection with her mortgage, imminent risk of paying illegitimate debts, financial damages, anxiety, frustration, and mental and emotional distress.

140.    Because of MCS's violations of the FCCPA, Plaintiff is entitled to actual damages, punitive damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

### COUNT IV AS TO DEFENDANTS' TRESSPASS

141.    Plaintiff owns and possesses the Property.

142.    Plaintiff did not give Defendants authorization, a license, or invitation to enter the Property, change the locks, or "winterize" the Property, nor did the Defendants have a reasonable excuse to enter the Property, change the locks, or

"winterize" the property.

143.     Nonetheless, MCS willfully or in a reckless disregard of the Plaintiff's rights, acting in concert with JPMC and under its instruction, willfully entered the Property, changed the locks, and "winterized" the Property.

144.     Defendants' unlawful trespass directly caused Plaintiff damages.

145.     For example, by shutting off the utilities, including the air conditioner, without a reasonable basis to do so, the Defendants caused humidity and moisture to sky rocket inside the Property that resulted in damage like mold and mildew growth.

146.     Because Defendants changed the locks, Plaintiff also spent money to replace the locks put in place by Defendants.

147.     Because of Defendants' trespass, Plaintiff is entitled to actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, The Plaintiff respectfully request this Honorable Court to enter an order granting a judgment in their favor against Defendants for:

(i)      Actual damages.

(ii)     Statutory damages.

(iii)    Punitive Damages.

(iv)    Costs and attorneys' fees.

(v)     Injunctive and declaratory relief.

(vi)    An order directing Defendants and their agents, or anyone acting on their behalf, to immediately restrain from altering, deleting, or destroying any documents or records; and

(vii)    Any such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues so triable.

Respectfully Submitted,

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq. (FL Bar No: 0115546)
E-mail: darren@cloorg.com
J. Dennis Card, Jr., Esq.  (FL Bar No: 0487473)
E-mail: dennis@cloorg.com
CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132
*Attorneys for Plaintiff*